**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BILLIE JO ADAMS,<br><br>　　　　　　　　　　　　Defendant. | Case No. 19-cr-01787-BAS-22<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)**<br>**(ECF No. 2054)** |

　　　　On April 3, 2022, the Court sentenced Defendant Billie Jo Adams to 100 months in custody concurrent on both counts, of which she has served approximately 52 months. (ECF No. 1889.) Ms. Adams now moves pro per to reduce her sentence to time served for extraordinary and compelling reasons. (Defendant's Motion, ECF No. 2054.) The Court referred the Motion to the Federal Defenders office for an evaluation, and Federal Defenders filed a Status Report concluding the Court "can decide the motion on the existing record without further assistance of counsel." (ECF Nos. 2057, 2071.) The Government opposes Defendant's Motion. (Government's Response, ECF No. 2086.) For the reasons stated below, the Court **DENIES** Ms. Adams' motion.

## I.   BACKGROUND

Ms. Adams was one of 42 defendants indicted in a large national methamphetamine distribution organization run out of San Diego. (Presentence Report ("PSR") ¶¶ 4–27, ECF No. 1706.) She was a Wyoming-based methamphetamine sub-distributor. (*Id.*) She pled guilty to one count of conspiracy to distribute methamphetamine and one count of conspiracy to money launder. (ECF No. 1640.)

Ms. Adams has a lengthy criminal record, including a prior conviction for the exact same conduct—conspiracy to distribute methamphetamine—for which she received 120 months in custody. (PSR ¶¶ 50–58.) In 2017, she was convicted of DUI after going to the house of her husband, Bobbi Adams, from whom she was separated, assaulting him and his girlfriend, and then backing his truck into his girlfriend's vehicle. (*Id.*)

Ms. Adams now files a motion for compassionate release. The extraordinary and compelling reasons she claims justify her release from custody include: (1) the incapacitation of Bobbi Adams, the husband she assaulted in 2017, whom she claims lives with his sister due to a recent motorcycle accident; (2) the fact that she has been denied participation in the Bureau of Prisons ("BOP")'s Residential Drug Abuse Program ("RDAP") because she is allegedly "a negative influence" and "I have a bad attitude," which means she is not eligible for the 12-month reduction in sentence RDAP would entitle her to; (3) her medical conditions that include long-term effects from COVID-19 such as muscle spasms, fatigue, joint pain, excruciating headaches, nausea, shortness of breath, and dizziness; migraines; gastrointestinal issues; high cholesterol; a hiatal hernia; untreated sleep apnea; PTSD; high anxiety; major depressive disorder; and arthritis; (4) inadequate medical care because she has not been able to see a psychiatrist or receive medicine for anxiety or depression; (5) the rise in COVID-19 cases at FCI Phoenix where she is being housed; (6) numerous issues at the prison including sewage backup; a six-hour power outage; insufficient clothing, hygiene items, and laundry soap; and a major drug issue at the institution that adds to the potential for violence. (Defendant's Motion).

On March 22, 2024, this Court denied Ms. Adams's Motion to Modify her Sentence pursuant to the change in the Sentencing Guidelines. (ECF No. 2064.)

Ms. Adams has not exhausted her administrative remedies by seeking compassionate release from the warden at FCI Phoenix.

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, modify or reduce a defendant's term of imprisonment, but only after she has exhausted her administrative remedies. The "district court must enforce the administrative exhaustion requirement" when it is properly invoked by the Government. *United States v. Keller*, 2 F.4th 1278, 1280 (9th Cir. 2021). "Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *United States v. Ng Lap Seng*, 459 F. Supp. 3d 527, 532 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency, since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id.*

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition with the Warden seeking release, which is denied by the Warden and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting her administrative remedies.

Defendant has provided no evidence that she attempted to exhaust her administrative remedies in this case. In fact, she checks the box indicating she did not request compassionate release from the Warden. The Government invokes this failure to exhaust administrative remedies in its response. Hence, on this ground alone, the Court finds denial of the Motion is appropriate.

**B.     Extraordinary and Compelling Reasons**

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*  As the movant, the defendant bears the burden to establish that she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

None of the reasons listed by Ms. Adams is sufficient to establish "extraordinary and compelling" reasons for her release.  First, although "[t]he incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for the spouse" can be grounds for release, here Ms. Adams fails to prove either that her spouse is incapacitated or that she is the only available caregiver.  Simply the fact that Bobbi Adams was in a motorcycle accident is insufficient.  She must establish that he is incapacitated.  Second, he apparently is living with his sister, and Ms. Adams fails to show why the sister is not an appropriate caretaker.  Finally, as of 2017, Ms. Adams and her husband were separated, and she attempted to assault him and his girlfriend.  She fails to show why she would be an appropriate caretaker for Mr. Adams were he to need a caretaker.

Second, this Court agrees with those courts that have concluded that a defendant's failure to access the RDAP program, while regrettable, is insufficient reason to warrant compassionate release.  *E.g.*, *United States v. Moore*, No. 1:19-cr-63-DCN, 2021 WL 2417722, at *3 (D. Idaho, June 11, 2021); *United States v. Casas*, No. 3:10-cr-3045-BTM, 2021 WL 5359363, at *5 (S.D. Cal. Nov. 17, 2021).

Third, the medical conditions listed by Ms. Adams do not amount to a "serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process."  *See* U.S.S.G. § 1B1.13(b)(1).  Nor do any of her conditions "substantially diminish[] [her] ability . . . to provide self-care within the environment of a correctional facility and from which he or

she is not expected to recover." *Id.* The policy statements, issued by the U.S. Sentencing Commission on November 1, 2023, even if they are not binding, at least may inform the Court's decision as to whether certain conditions are extraordinary and compelling. *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021). The conditions listed by Ms. Adams do not rise to that level.

Fourth, Ms. Adams's failure to see a psychiatrist or to be prescribed psychotropic medication does not rise to the level of extraordinary and compelling reasons. First, she fails to show the necessity for these medications. She has apparently been able to access therapy and fails to demonstrate that additional services are necessary. Again, the policy statements, although not binding, may inform the Court's decision. Ms. Adams fails to demonstrate that she "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [she] is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(C).

Fifth, Ms. Adams fails to demonstrate that the seventeen cases of COVID-19 she alleges are currently at FCI Phoenix rise to the level of extraordinary and compelling reasons for release. Since vaccinations have become widespread in the BOP, courts have consistently refused compassionate release requests based on the threat of COVID-19 from inmates or detainees who have been fully vaccinated. *E.g.*, *United States v. Cobarruvias-Pete*, No. 18-cr-4151-CAB, 2021 WL 4819301, at *1 (S.D. Cal. Oct. 15, 2021) (citing cases); *see also United States v. Cortez*, No. CR-18-858-01-PHX-SPL, 2021 WL 689923, at *1 (D. Ariz. Feb. 23, 2021) ("The court cannot conclude, particularly in light of his vaccination, that defendant's current exposure to COVID-19 presents 'extraordinary and compelling reasons.'"); *United States v. Upshaw*, No. 1:14-cr-256-NONE, 2021 WL 2417012, at *2 (E.D. Cal. June 14, 20210) ("[C]ourts in this circuit and others have recognized that the widespread availability of COVID-19 vaccines within BOP facilities has significantly diminished the risk posed to federal prisoners by the virus and in turn lessened the degree to which the risks posed by COVID-19 may tip the scale in favor of compassionate release in cases where prisoners suffer from chronic medical conditions."

(citing cases); *United States v. Hall*, No. 3:18-cr-499-BR, 2021 WL 5566539, at *3 (D. Or. Nov. 29, 2021) (noting "other district courts in the Ninth Circuit and other judges in this District have . . . concluded inmates who have been fully vaccinated . . . have not satisfied the extraordinary and compelling standard" even if they suffer from medical conditions that make them more susceptible upon contracting COVID-19 (citing cases)). Ms. Adams claims she is fully vaccinated and fails to demonstrate that her risk of contracting COVID-19 is so great that it constitutes an extraordinary or compelling reason for release.

And, finally, this Court agrees that "general conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release." *United States v. Bolden*, No. CR 16-320-RSM, 2020 WL 4286820, at *7 (W. D. Wash. July 27, 2020); *see also United States v. Willis*, 663 F. Supp. 3d 1203, 1120 (D. Or. 2023) (providing general conditions in a prison, without some circumstance individual to a particular defendant, are insufficient to establish compassionate release). Indeed, if all that was needed to establish compassionate release was that there was a sewage leak, a power outage, insufficient supplies, and drug issues at FCI Phoenix, without specifying how this impacts a defendant, then all prisoners housed at FCI Phoenix would be entitled to release.

Ms. Adams simply fails to show that there are any extraordinary or compelling reasons that would justify her immediate release from prison.

**C.    Section 3553(a) Factors**

The Court further finds that the factors listed under § 3553(a) militate against releasing Ms. Adams. Notably, she was convicted of the exact same conduct and received a 120-month sentence, after which she resumed her criminal behavior. Although she makes much of the fact that this conviction was a long time ago, it is noteworthy that she was in custody during much of the time between her past conviction and this one. If the previous 120-month sentence was insufficient to deter Ms. Adams from resuming her criminal activity, the Court is concerned that releasing her after serving only 52 months would be

insufficient deterrence, would fail to reflect the seriousness of this second conviction, and would not promote sufficient respect for the law.

## III. CONCLUSION

Because Ms. Adams has not exhausted her administrative remedies, her Motion to reduce her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**. (ECF No. 2054.) Even if she had exhausted her administrative remedies, she fails to show either extraordinary and compelling reasons justifying her release or that the § 3553(a) factors support such a sentence reduction.

**IT IS SO ORDERED.**

DATED: April 25, 2024

Hon. Cynthia Bashant
United States District Judge